896 F.Supp. 1120 (1995)
Willie Mae HARRIS, et al., Plaintiffs,
v.
Governor Fob JAMES, et al., Defendants.
No. CV-94-A-1422-N.
United States District Court, M.D. Alabama, Northern Division.
July 10, 1995.
Order Implementing Plan September 13, 1995.
*1121 *1122 J. Richard Cohen, Southern Poverty Law Center, Montgomery, AL, Lawrence F. Gardella, Legal Services Corp. of Alabama, Montgomery, AL, for plaintiffs.
Henry Clay Barnett, Jr., Herman H. Hamilton, Jr., Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, James H. Evans, Jeff Sessions, Atty. Gen., Office of the Atty. Gen., Montgomery, AL, Charles H. Durham, III, Asst. Atty. Gen., Alabama Medicaid Agency, Montgomery, AL, for defendants.

MEMORANDUM OPINION AND ORDER

I. INTRODUCTION
ALBRITTON, District Judge.
This cause is now before the Court on the Motion for Summary Judgment filed by Plaintiffs on March 14, 1995. For reasons that follow, the Court finds that Plaintiffs' Motion for Summary Judgment is due to be GRANTED on the issue of liability.
On November 2, 1994, Plaintiffs[1] filed this civil action pursuant to 42 U.S.C. § 1983 seeking to enforce their rights under the Social Security Act. Plaintiffs, who are Medicaid recipients, seek injunctive relief that requires the State of Alabama to ensure necessary medical transportation to them and to all Medicaid recipients, as Plaintiffs allege is mandated by federal law.
Plaintiffs allege that Alabama's failure to offer non-emergency transportation to and from providers of services paid for by Medicaid and its failure to ensure that such transportation is available has forced the Plaintiffs to delay or forgo needed medical services and has subjected the Plaintiffs to a deterioration of their medical conditions. Plaintiffs allege that Defendants have failed to develop, implement, and maintain an adequate state plan that ensures necessary, non-emergency transportation for recipients and actually provides such transportation. Plaintiffs contend that 42 U.S.C. §§ 1396, 1396a-u, the Medicaid subchapter of the Social Security Act, and regulations issued thereunder, require such transportation and that the state's failure to provide it violates Plaintiffs' rights to such transportation.
Plaintiffs ask this court to (1) declare that the Alabama state plan for administering Medicaid violates rights guaranteed to the Plaintiffs by 42 U.S.C. § 1396a and the regulations adopted thereunder, (2) order Defendants to develop, implement, and maintain a state plan for transportation that will protect Plaintiffs' rights as guaranteed by 42 U.S.C. § 1396a and the regulations adopted thereunder, (3) award reasonable attorneys' fees and costs, and (4) order any other relief as the court deems necessary and just.
On May 17, 1995, Defendants filed a Brief in opposition to Plaintiffs' Motion for Summary Judgment.[2] In their brief, Defendants contend that although Alabama's non-emergency transportation plan is undoubtedly imperfect, the current record is not adequate for this court to determine that the plan violates federal law. Imperfection and ineffectiveness do not equate to illegality according to the Defendants. Defendants argue that the Alabama plan substantially complies with the requirements of the federal Medicaid statute and regulations. Defendants urge this court to find that the Plaintiffs may not bring this action because they have not done all they can to get help with their *1123 transportation problems under the current system.
Defendants seek to distinguish the Alabama plan from the Texas plan that a federal district court struck down in Smith v. Vowell, 379 F.Supp. 139 (W.D.Tex.), aff'd, 504 F.2d 759 (5th Cir.1974).[3] Instead, Defendants liken the Alabama plan to the plan that a federal court in Tennessee provisionally approved in Daniels v. Tennessee Dep't of Health & Env't, No. 79-3107, 1985 WL 56553 (M.D.Tenn. Feb. 20, 1985). Defendants note that Congress contemplated the use of volunteers to provide services to Medicaid recipients and gave states discretion to devise a plan for necessary transportation. They state that they devised such a plan and that using volunteers keeps costs down. Finally, the Defendants contend that the Secretary of Health and Human Services ("Secretary") has taken a laissez-faire approach to Alabama's plan and that this court should follow suit.

II. FACTS
The court has carefully considered all affidavits, statements, exhibits, and documents appropriately submitted in support of and in opposition to Plaintiffs' Motion for Summary Judgment. Viewed in the light most favorable to the non-moving parties, the submissions establish the following undisputed facts:
Willie Mae Harris ("Harris") is a Medicaid recipient who resides in Perry County, Alabama. (Harris Aff.) Harris suffers from end stage kidney disease and needs three dialysis treatments a week. Id. Once or twice a month, Harris misses a dialysis treatment because of a lack of transportation. Id. Missing dialysis harms her health and makes her sick. Id. For example, in December 1994, Harris missed two dialysis treatments in a row because she could not get transportation, and she ended up having to go to the emergency room. Id.
There is no dialysis clinic in Harris' home town of Marion so she must travel forty miles one way from her home to the dialysis clinic in Selma. Id. No public transportation is available. Id. Because her car is unsafe to drive, Harris relies on her children to drive her to dialysis appointments. Id. Often there is not a car that works, and Harris pays a neighbor twenty dollars to take her to and from an appointment. Id. Harris does not have enough income to pay this cost very often. Id. In 1992, Harris asked the Department of Human Resources in Marion for assistance with her medical transportation, and she received no help. (Def.Attach. 1).
Linda Patton ("Patton") lives with her children in Birmingham, Alabama. (Def.Attach. 1). Patton and her two children, Tanika and John, are Medicaid recipients. (Patton Aff.) Patton is blind and suffers from endometriosis and other health problems. Id. Her children need to go to the doctor for general check-ups and pediatric, dental, and eye appointments. Id. The lack of transportation to her family's doctor appointments is an ongoing problem that has caused harm to the health of Patton and her children. Id. She has had to cancel medical appointments for herself and her children because she lacked transportation to the appointments. Id.
Patton often requests non-emergency medical transportation from Metro Area Express-Very Important Person ("MAX-VIP"), a specialized public transportation service for the Birmingham area, for herself and her children. (Def.Attach. 1). Patton calls MAX-VIP one week before a medical appointment for herself or one of her children to reserve a seat on the MAX-VIP vehicle for the date of the appointment. (Def.Attach. 1). On some occasions, Patton is unable to arrange transportation from this service, and as she is unable to pay for other transportation, she is forced to cancel appointments with her doctor or her children's doctor. (Patton Aff.).
Bessie Ross ("Ross"), of Selma, Alabama, is the sister and next friend of Tommy Gordon ("Gordon"), a Medicaid recipient. (Ross Aff.) Gordon is handicapped and mentally *1124 retarded; he also is afflicted with high blood pressure and a hiatal hernia. Id. Gordon's conditions require him to see the doctor on a regular basis. Id. When he misses doctor appointments, his health worsens. Id.
Tommy has recurring problems obtaining transportation to his appointment with his doctor. Id. Ross does not have a car and has back problems which prevent her from being able to drive. Id. Ross cannot afford the expense of transportation by cab, so she tries to arrange transportation by paying friends a small fee. Id. She is not always successful, and Gordon has missed many appointments because there is no available transportation. Id.
Bertha J. is a Medicaid recipient with end stage renal disease. (Bertha J. Aff.) She must travel fifty miles for her hemodialysis treatments three times a week. Id. Obtaining transportation to her dialysis appointments is a severe hardship for her. Id. Over the past three years, Bertha J. has regularly missed dialysis treatments once or twice a month because of a lack of transportation. Id. Bertha J. has sought assistance from the Department of Human Resources twice, but both times she was told that they did not have transportation. Id.
Although Bertha J. recently found reliable transportation to her dialysis, she must pay fifteen dollars a trip. Id. The cost of her transportation to dialysis constitutes at least a third of her total income. Id. Consequently, she struggles to pay her utilities and other necessities. Id.
None of the aforementioned representative plaintiffs has contacted Medicaid employees about transportation requests. (Def.Attach. 1). They have sought transportation assistance from such sources as the Alabama Kidney Foundation, private individuals, Children's Aid, and the Alabama Institute of the Deaf and Blind. Id.
In addition to the evidence regarding the difficulties that the named plaintiffs have had securing transportation to their medical appointment, there is evidence that other class members have similar problems. Steven Prince ("Prince") of Colbert County, has a daughter who receives Medicaid through SOBRA. (Prince Aff.) His daughter has birth defects and reflux problems that require frequent medical treatment from specialists in Birmingham. Id. Medicaid has covered most of the cost of medical treatment, but the travel back and forth to the doctors and clinics has created a financial hardship on the entire family. Id. Consequently, Prince is presently fighting eviction and utility cut-off. Id. Medicaid has never advised Prince that there was assistance available to help with transportation for his daughter's medical treatments. Id. Prince has inquired about such assistance at both the Department of Human Resources and the local Medicaid district office. Id.
Various state officials have indicated concern over the adequacy of Alabama's plan for non-emergency transportation of Medicaid patients. The Deputy Commissioner of Programs for the Alabama Medicaid Agency, Donna Wallace, wrote a letter on July 23, 1991 in which she said that "[w]e do not have a [non-emergency transportation] program in Alabama at this time. We are aware of CFR 42 mandate for transportation, as well as the state Agency's obligation to determine the services to be necessary to secure medical treatment for the recipients." (Ptf.Ex. 3). The Associate Director of Transportation Programs at the Alabama Medicaid Agency, R. Dale Boyles, indicated in a May 29, 1992 memorandum that Medicaid had an intention to expand the transportation program to include a non-emergency transportation program. (Ptf.Ex. 5). Vicki Huff, the Alabama Medicaid Agency's Director of Medical Services Division, sent a note to the agency's Commissioner, David Toney, in which she recognized that the agency had no operational non-emergency transportation program. (Ptf.Ex. 6). Carol Hermann, the Commissioner of the Alabama Medicaid Agency during Governor Hunt's administration, has opined that Alabama's non-emergency transportation is inadequate. (Ptf.Ex. 7). Various officials of the Alabama Department of Public Health have identified the lack of transportation as a major problem for persons in need of medical care. (Ptf.Ex. 12, 13, 14). The Department of Health and Human Services, which monitors state Medicaid programs, long ago informed Alabama that its *1125 failure to ensure transportation to recipients was a long-standing compliance issue. (Ptf.Ex. 8).
On the other hand, C. Russell Black ("Black"), the Program Manager for Medicaid Transportation for the Alabama Medicaid Agency, avers that Alabama has a working plan for providing necessary transportation to Medicaid recipients. (Def.Attach. 2). Black is the Medicaid staff person charged with management and supervision of the transportation program for the Alabama Medicaid Agency. Id. He spends virtually all of his time dealing with transportation issues both on a strategic and individual case basis. Id. Black explains that the basic transportation program provides for (a) payment to contract ambulance providers for services to Medicaid recipients as set forth in the plan and state regulation, and (b) assistance in arranging appropriate non-emergency transportation without payment for transportation itself by relying on the existing network of transportation means and services available through state agencies, volunteer groups, non-profit organizations, public services, relatives and other resources. Id. The Alabama Medicaid Agency coordinates with the Department of Human Resources to provide this assistance to recipients. Id. Black concedes that the system is not "perfect," but argues that the system is working daily to provide transportation to "many" Medicaid recipients. Id.
The provisions in Alabama's Medicaid plan that are intended to provide for ensuring necessary transportation of recipients to and from providers are contained in Defendants' Exhibit 1. The plan states that
[t]he State agency assures that necessary transportation of recipients to and from sources of medical care will be provided as follows:
1. Any appropriate means of transportation which can be obtained without charge through volunteer groups, nonprofit organizations, public services, relatives or other persons.
2. Ambulance Transportation Service All transportation must be medically necessary and reasonable. No payment may be made for ambulance service if some other means of transportation could be utilized without endangering the recipient's health.
a. Emergency ambulance services are provided eligible recipients between:
(1) Scene (address) of emergency to hospital.
(2) Nursing home to hospital.
(3) Local hospital to specialized hospital. (Example: From Montgomery to University Hospital in Birmingham.)
b. Non-Emergency ambulance services are provided eligible recipients in local area between:
(1) Nursing home to hospital or specialized clinics for diagnostic tests. (Does not include physician's office for outpatient visit.)
(2) Hospital to nursing home.
(3) Home to hospital or specialized clinic for diagnostic tests or procedures for invalid recipients. This does not include physician's office for outpatient care. (Maximum of two visits per month without prior approval.)
Effective Date: 11/19/75
(4) Hospital to home for early post-operative release or paraplegia patients.
Effective Date: 11/19/75
(5) Home to treatment facility (for recipients designated on Home Health Care Program that are confined as "bed-fast" patients). (Maximum of two visits per month without prior approval.)
Effective Date: 11/19/75
(6) Nursing home to nursing home when change in skilled level of care is changed for patient and assigned nursing home does not have professional capability. (Intermediate care changed to skilled care.)
c. Non-emergency ambulance services provided eligible recipients outside of local area (Example: From Montgomery to Spain Rehabilitation Center, Birmingham) must be prior authorized by Alabama Medicaid Agency, 2500 Fairlane Drive, Montgomery, Alabama 36130, Telephone 277-2710.
d. Certification that medical condition warrants the use of ambulance service is *1126 required by the attending physician for both emergency and non-emergency use.
(Def.Ex. 1). The Alabama Administrative Code states that the Alabama Medicaid Agency relies on the Department of Human Resources to arrange for transportation from existing recognized nonprofit volunteer groups. (Ptf.Ex. 9). A 1992 survey by the Alabama Medicaid Agency showed that in an average month most of the offices of the Department of Human Resources received requests for transportation from Medicaid recipients that the offices were unable to meet. (Ptf.Ex. 10).

III. SUMMARY JUDGMENT STANDARD
Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-23, 106 S.Ct. at 2552-53.
Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).
After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See, Fed.R.Civ.P. 56(c).

IV. DISCUSSION

A. 42 U.S.C. § 1983
Plaintiffs assert correctly that this court has original jurisdiction over this case because it arises under federal law. See, 42 U.S.C. § 1331. Plaintiffs allege that the Defendants, acting in their official capacities as state actors, have violated federal law and caused Plaintiffs to be deprived of rights secured to them by 42 U.S.C. § 1396a and 42 C.F.R. §§ 431.53 and 441.62. Plaintiffs seek redress for this violation of their rights by bringing suit under 42 U.S.C. § 1983.

1. Enforcing a Statutory Right Under Section 1983
By its terms, Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. The full text of Section 1983 provides that:
[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. *1127 42 U.S.C. § 1983. As the plain language of Section 1983 indicates, the remedy encompasses violations of federal laws as well as violations of rights secured by the Constitution of the United States. The Supreme Court has held on numerous occasions that the coverage of Section 1983 must be construed broadly. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 105, 110 S.Ct. 444, 447-48, 107 L.Ed.2d 420 (1989). Moreover, the Eleventh Circuit has noted that, "Section 1983 is the exclusive statutory cause of action available to a plaintiff seeking compliance with the Social Security Act on the part of a participating state." Silver v. Baggiano, 804 F.2d 1211, 1215 (11th Cir. 1986).

2. The Particular Provisions at Issue

a. Medicaid
By enacting Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396 et seq., Congress established a federal program called Medicaid which "provides financial assistance to States so that they may furnish medical care to needy individuals." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). Although participation by a State in the Medicaid program is voluntary, States that make the choice to participate "must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services (Secretary)." Id. The Eleventh Circuit has explained that
Medicaid is a cooperative venture of the state and federal governments. A state which chooses to participate in Medicaid submits a state plan for the funding of medical services for the needy which is approved by the federal government. The federal government then subsidizes a certain portion of the financial obligations which the state has agreed to bear. A state participating in Medicaid must comply with the applicable statute, Title XIX of the Social Security Act of 1965, as amended 42 U.S.C. § 1396, et seq., and the applicable regulations.
Silver v. Baggiano, 804 F.2d at 1215 (emphasis added).

b. Specific Provisions at Issue
Subchapter XIX of the Social Security Act governs grants to states for medical assistance programs. Specifically, the subchapter appropriates funds
[f]or the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each such fiscal year a sum sufficient to carry out the purposes of this subchapter.
42 U.S.C. § 1396. Sums appropriated under this section are used for making payments to States which have submitted, and had approved by the Secretary, plans for medical assistance. Id. Requirements for the contents of State plans for medical assistance are provided in 42 U.S.C. § 1396a(a). The relevant portion of this section for purposes of this case is found in 42 U.S.C. § 1396a(a)(4)(A). According to this section, a State plan for medical assistance must provide
such methods of administration (including methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods, and including provision for utilization of professional medical personnel in the administration and, where administered locally, supervision of administration of the plan) as are found by the Secretary to be necessary for the proper and efficient operation of the plan[.]
42 U.S.C. § 1396a(a)(4)(A) (emphasis added).
Through regulations promulgated under this section and by authority granted by 42 *1128 U.S.C. § 1302,[4] the Secretary has set forth which methods of administration are necessary for the proper and efficient operation of the plan. See, 42 C.F.R. §§ 431.1 et seq. This part of the Code of Federal Regulations
establishes State plan requirements for the designation, organization, and general administrative activities of a State agency responsible for operating the State Medicaid program, directly or through supervision of local agencies.
42 C.F.R. § 431.1 (emphasis added). In particular, Subpart B sets forth State plan requirements that pertain to the proper and efficient administration of such a plan. See, 42 C.F.R. § 431.40(a)(2). The first provision at issue in this case is contained within Subpart B and is denominated 42 C.F.R. § 431.53. This provision states that
[a] State plan must
(a) Specify that the Medicaid agency will ensure necessary transportation for recipients to and from providers; and
(b) Describe the methods that the agency will use to meet this requirement.
42 C.F.R. § 431.53 (emphasis added). Clearly, this regulation was issued pursuant to Section 1396a(a)(4)(A), the statutory requirement that a state plan must provide such methods of administration as are found by the Secretary to be necessary for the proper and efficient operation of the plan.[5]
Plaintiffs also rely on 42 C.F.R. § 441.62 which provides that an agency must offer to the family or recipient, and provide if the recipient requests, necessary assistance with transportation as required under § 431.53 of this chapter and necessary assistance with scheduling appointments for services.[6] Section 441.62 does not reveal the section of the statute from which it originates. It is contained in a part of the C.F.R. which sets forth State plan requirements and limits on FFP services defined in part 440 of this subchapter. The subpart of the C.F.R. states that it implements sections 1902(a)(43) and 1905(a)(4)(B) of the Social Security Act. Thus, this regulation is also firmly grounded in the statute.
This case was before the court earlier on Defendants' Motion to Dismiss. In reaching its ruling on that Motion, the court carefully analyzed the applicable case law and the particular provisions at issue and determined that Plaintiffs have made allegations necessary to establish that 42 U.S.C. § 1396a(a)(4)(A) and 42 C.F.R. §§ 431.53 & 441.62 create enforceable rights. The court determined that Plaintiffs had done so, and consequently, the court authorized Plaintiffs to bring this action under Section 1983.[7] The question now before this court is whether Alabama's plan is in accordance with the requirements of 42 U.S.C. § 1396a(a)(4)(A) and 42 C.F.R. §§ 431.53 & 441.62. If Alabama's plan is inadequate, then this court must find for the Plaintiffs on their Motion for Summary Judgment and turn to the question of appropriate relief.

3. Challenges to Other Plans
This case is not the first in which a court has been called upon to evaluate a state *1129 Medicaid transportation plan to determine whether it measures up to the requirements of the Medicaid statute and regulations. Most such court actions have resulted in judicial determinations that the challenged plans did not comport with the requirements of the Medicaid statute and regulations. See, e.g., Morgan v. Cohen, 665 F.Supp. 1164 (E.D.Pa.1987)[8]; Bingham v. Obledo, 147 Cal. App.3d 401, 195 Cal.Rptr. 142, (1983)[9]; Fant v. Stumbo, 552 F.Supp. 617 (W.D.Ky.1982)[10] Two cases dealing with challenges to state Medicaid transportation plans are especially relevant to this court's determination and merit a more detailed examination.

a. Smith v. Vowell

Smith v. Vowell involved an action brought by a Texas welfare recipient on behalf of himself and others similarly situated seeking injunctive and declaratory relief. The recipient claimed that Texas had failed to comply with the Social Security Act and one of its implementing regulations[11] by failing to provide medically necessary transportation for Medicaid recipients. In considering the statutory authority for the regulation, Senior United States District Judge Clary noted that
it is clear that the Secretary of [HHS] has determined the instant regulation to be "necessary to the efficient administration" of the program, for the obvious (and common sense) reason that "needy will not be able to obtain necessary and timely medical care if they are without the means of getting to the providers of the service."
Smith v. Vowell, 379 F.Supp. at 150 (footnotes omitted). Holding that the regulation had the full authority of the statute itself, the court found that this requirement unambiguously mandated that states participating in Medicaid provide recipients with transportation above and beyond the emergency ambulance transportation that the Texas plan provided, and that this right could be enforced under 42 U.S.C. § 1983. Id. at 141 & 159-161.
The named plaintiff in the Smith case had a variety of medical problems that caused him to need transportation to various health care providers at least three days a week. Id. at 143. His income was insufficient to pay for ambulance trips to these appointments, *1130 and Smith was also unable to afford taxicabs for such visits. Id. at 143-144. Personal friends, private charities, other volunteer agencies, and Smith's Department of Public Welfare caseworkers were unable to schedule regular transportation for Smith. Id. at 144-45. Smith's doctors indicated that his transportation difficulties were having a direct and injurious effect upon his medical treatment. Id. at 145.
The court examined the guidance for developing a state plan that the Secretary of the Department of Health Education and Welfare provided in the Medical Assistance Manual ("MAM") and then turned to an evaluation of the Texas plan. Id. at 149-54. The Texas plan provided for payment for ambulance services when the service was required by the patient's condition and the patient is transported to the nearest appropriate hospital and when the transportation is medically necessary and not merely for the convenience of the patient. Id. at 155. This is the only transportation that the Texas plan provided. The court found that the Texas plan in both form as well as in practice was not in compliance with the applicable federal regulations and the Medicaid guidelines. Id. at 159. The court would not accept Texas' argument that its practice of having the recipient's social worker plan with the client, family or other appropriate persons for necessary transportation satisfied its obligation under federal law. Id. The court noted that the regulation required the state plan itself to specify the methods used to provide transportation. Id. The court held as a matter of law that
the State Medical Assistance Plan under Title XIX must contain within its four corners: (a) a guarantee of necessary medical transportation for eligible welfare recipients and (b) a general description of the various methods to be used.
Id. at 159.
Thus, in Smith v. Vowell, the court ruled that Texas' non-emergency transportation plan was inadequate after reviewing the situation of the one named plaintiff. 379 F.Supp. at 157-159. The court specifically noted that the supposed ability of the social workers to "plan" transportation for recipients was no substitute for an adequate plan.
Furthermore, one of the lessons of this entire case is of the fruitlessness of mere "planning" without any resources to follow through with the "plans" formulated. The State urges us to consider a social worker vaguely "planning" without any means, money, or power to implement such plans as somehow rendering compliance within the Federal mandateand also effectively helping her client. It has been demonstrated both hypothetically and, in practice, in plaintiff Smith's case that such a course is practically useless when confronted with the harsh realities dictated by the conditions of persons such as plaintiff Smith, for Benjamin Smith does not need more "planning," he needs a ride.
Id. at 160 (emphasis added; footnotes omitted).
Texas appealed this case to the Fifth Circuit Court of Appeals, which summarily affirmed the district court. See Smith v. Vowell, 504 F.2d 759 (5th Cir.1974). Therefore, under Bonner v. City of Prichard, Ala., 661 F.2d at 1209, Smith v. Vowell is binding precedent on this court.

b. Daniels v. Tennessee

In Daniels, a class of Medicaid recipients sued the State of Tennessee contending that the state failed to adequately ensure transportation to and from necessary medical care in violation of the Medicaid provision in the Social Security Act and its implementing regulations. Daniels, 1985 WL 56553 at *1. As a result of these alleged violations, the recipients could not obtain adequate transportation to and from medical treatment or had been denied Medicaid coverage of transportation that they arranged on their own. Id. During the pendency of the lawsuit, the parties entered into an Agreed Order, pursuant to which the defendants submitted a new transportation plan meant to ensure necessary transportation as required by federal law and plaintiffs were given an opportunity to respond to the state's proposal. Id. at *2.
The court noted that the old Tennessee plan had no systematized transportation program, no funds available for meeting transportation *1131 needs, and no formal records relating to transportation assistance. Id. at *3. The proposed plan offered substantial reforms and provided for a "systematic, uniform method to be employed by case workers in each county office upon receiving a request for transportation assistance." Id. at *4. The proposed plan utilized special screening forms for use in screening requests and keeping records of services requested and provided. Id. A backup mechanism was made available to the county case worker in the event that transportation assistance could not be arranged on the local level, in that the county case worker could then draw upon the assistance of the Medicaid division of the Department of Health and Environment in Nashville using a toll free number. Id. The court further noted that
[i]n addition to the establishment of this formalized structure for meeting the transportation needs of Medicaid recipients, the proposed plan includes, as a crucial component, provision for payment of volunteers. The county case worker would be able to offer reimbursement at twenty cents per mile, thus enhancing the availability of volunteers.
Id. (emphasis added). Plaintiffs challenged various aspects of the proposed plan and sought a voucher or token system and provision for food and lodging for the recipients in certain circumstances. Id. at *4-*5.
After making a few slight modifications[12] to certain aspects of the proposed plan, the court approved the plan as one which comported with the requirements of the Social Security Act and its implementing regulations. Id. at *9. The court gave Tennessee a period of time to implement the plan and retained jurisdiction over the case for twelve months from implementation so it could ascertain whether the plan was fully implemented and so that it could ensure the efficacy of the program. Id.

4. Adequacy of Alabama's Plan
This court has a duty to discern whether Defendants, while acting under color of State law, have deprived Plaintiffs of rights granted to them by a federal statute. In this case that inquiry requires the court to determine whether Alabama's state Medicaid plan ensures Medicaid recipients that they will have necessary transportation to and from health service providers. Although the analysis of the adequacy of a state Medicaid plan is by no means an easy task, the experiences of the Plaintiffs, together with the other evidence that requests for transportation assistance are not met, demonstrate that the Alabama plan fails to ensure necessary transportation to the members of the class. The court finds that the Alabama plan lacks the vital components of a plan that meets the requirement on the state to provide necessary transportation. Additionally, the court finds that the Alabama plan is far too similar to plans of other states that have failed to live up to federal requirements for states that choose to participate in the Medicaid program. Thus, Plaintiffs' Motion for Summary Judgment is due to be GRANTED to the extent that it seeks a determination that the Alabama Medicaid plan is in violation of federal requirements that such a plan provide necessary transportation to Medicaid recipients.
The court is well aware that Alabama may exercise discretion in shaping a plan that meets the requirements of the Social Security Act and the regulations that implement it. Such discretion includes considering the cost to the State of the state Medicaid plan. However, once a state chooses to participate in Medicaid it must do so in a way that complies with federal requirements. The court in Daniels recognized these realities by stating that
[t]he administrative requirement to provide transportation assurance [ ...] is not elective but is a mandatory duty of the State. The State has extremely wide latitude in developing the methods for meeting this requirement; however, the means chosen must assure adequate transportation to and from medical providers. In meeting the transportation assurance *1132 requirement, the State also has a duty to hold costs to a minimum.
Daniels, 1985 WL 56553 at *3 (emphasis added).
Alabama has not exercised its discretion in a way that ensures that recipients will get necessary transportation to providers. The court notes that Alabama is well within its rights to the extent that it has attempted to fashion a plan that is cost-effective; however, a cost-effective plan must still meet the requirements of the Social Security Act and the regulations promulgated thereunder. Obviously, the most cost effective plan would not require a penny of state money to be spent on transportation, but the Defendants cannot argue that such a plan could comply with the mandates of federal law. A state choosing to participate in Medicaid must ensure that it complies with federal requirements. Neither a state's exercise of discretion nor its attempts to keep costs down may override this mandate. This is not to say that the State cannot incorporate volunteers into its plan, but it cannot rely exclusively on such volunteers unless to do so ensures necessary transportation.
The evidence before this court compels a finding that the Alabama plan is inadequate to fulfill Alabama's obligation under the Social Security Act and regulations promulgated thereunder. Alabama attempts to fulfill its obligation to ensure necessary transportation for recipients to and from providers by providing ambulance transportation in very strictly limited circumstances and assistance in arranging transportation which can be obtained without charge through volunteer groups or other sources. Alabama makes absolutely no provision for those occasions when transportation cannot be arranged in this fashion.
Agents of the Alabama Medicaid Agency and others familiar with the workings of the program acknowledge that the program is often inadequate to ensure transportation to recipients. The evidence before this court reveals that Department of Human Resources offices throughout Alabama have been unable or unwilling to provide transportation for many Medicaid recipients who have requested it. Alabama's inability to explain to this court the precise reasons why the transportation requests were denied by the Departments of Human Resources compels this court to conclude that Alabama has delegated its duty to ensure transportation to these agencies without overseeing how they carry out that mandate.
The Alabama state plan for transportation for Medicaid recipients fails to ensure that every eligible individual will have transportation necessary for access to care provided under a Medicaid reimbursement scheme. Defendants do not dispute that the Alabama plan failed to provide necessary non-emergency transportation to the named plaintiffs and other members of the class. Instead, Defendants argue that the state has provided assistance to many recipients on many occasions. The Defendants' plan does not include the kind of record keeping that would enable this court to verify the efficacy of the program with greater accuracy, but greater accuracy is not needed. The court notes that even if the Defendants are correct and "substantial compliance" by a state satisfies the requirements of the federal statute and regulations at issue, Alabama has failed to substantially comply with the requirements of 42 U.S.C. § 1396a(a)(4)(A) and 42 C.F.R. §§ 431.53 & 441.62 and has failed to ensure Plaintiffs the rights that those sections guarantee them.
Defendants' argument that the Alabama plan is more similar to the one that the court approved in Daniels than to the one that the court disapproved in Smith v. Vowell is without merit. The Daniels plan is far more detailed and complete than the Alabama plan. It provided for record-keeping to ensure the plan's efficacy and set standards for eligibility. The crucial component of this plan was that it provided for reimbursement of volunteers who transport recipients to providers. Alabama's plan does not include any of these features. Instead, like the plan in Smith v. Vowell, it relies on emergency ambulance transportation and efforts by social workers to assist in coordinating unfunded transportation for the recipient that is provided by volunteers. This type of plan was inadequate in 1974, and it is inadequate today.
*1133 Even if this court were to find that the Alabama plan as written contained adequate assurances of necessary transportation, the fact that the plan is not being implemented in a way that meets the needs of Alabama Medicaid recipients such as the Plaintiffs would require the court to find the plan violates rights conferred on the Plaintiffs by the Social Security Act and its implementing regulations. As the court emphasized in Smith v. Vowell, "the important thing is that the methods described in the state plan show a commitment to assure that every eligible individual will have transportation necessary for access to any care provided under the plan." 379 F.Supp. at 151. This is not merely a rhetorical obligation the state must also operate a plan that ensures such transportation. Id. at 153-54. Accord, Wilder v. Virginia Hosp. Ass'n, 496 U.S. at 513-515, 110 S.Ct. at 2519-20; Morgan v. Cohen, 665 F.Supp. at 1176. Alabama has not demonstrated such a commitment. By implementing a system that provides only emergency ambulance transportation and limited assistance from social workers to find unfunded volunteer transportation, Alabama provides no more than Texas did prior to the decision in Smith v. Vowell.[13]
The court is not saying that unpaid volunteers cannot have a place in a state plan. Alabama, in determining how to best utilize scarce Medicaid dollars, may well consider some supervised and documented procedure for attempting to secure free transportation from volunteers before resorting to some form of paid transportation. The point is that transportation, whether free or paid for, must be ensured.
The court notes that it is disturbed by the evidence before it indicating that Alabama has long known that it was not in compliance with federal requirements for Medicaid transportation of recipients to providers and that Alabama has stalled in order to avoid implementing a program in compliance. (Ptf.Ex. 6, 8, 24).[14]
Perhaps even more troubling is the apparent disdain for federal requirements placed on states that agree to participate in the Medicaid program that is evidenced by a 1988 memorandum from Henry C. Vaughn, then Deputy Commissioner of Administration, to J. Michael Horsley, then Commissioner. The subject of this memorandum is "Inquiry from the FedsTransportation."
*1134 (Ptf.Ex. 30). In the body of the memorandum Vaughn explains that there had been repeated inquiries about the amount of money Alabama spent on non-emergency transportation which he had deflected by stating that Alabama does not break down transportation between emergency and non-emergency, but instead pays for medically necessary ambulance transportation. Id. The memorandum concludes with the following comment
[a]lthough they wouldn't tell me who had inquired in this matter, I fear that another uprising is in the making to make us pay for neighbors, taxicabs, buses, and rickshaws should they transport one of our recipients.
Id. (emphasis added). This memorandum hardly evidences a state Medicaid agency that is making its best effort to substantially or fully comply with the requirements of participation in the federal Medicaid program. The court recognizes, of course, that the memorandum was written several years ago. Hopefully, it does not express current attitudes.

5. Defendants' Other Arguments

a. Exhaustion of Remedies
Defendants argue that the Plaintiffs should not be allowed to bring this suit because they have not contacted the Alabama Medicaid Agency directly or initiated a "fair hearing." Defendants note that there is no evidence in the record that Plaintiffs ever attempted to avail themselves of Medicaid's administrative processes for addressing recipient grievances or to contact the appropriate Medicaid offices regarding their transportation difficulties. (Def.Attach. 1). Although Defendants acknowledge that Plaintiffs are not required to exhaust administrative remedies prior to initiating a suit under Section 1983, they attempt to recast an exhaustion argument by stating that unless and until Plaintiffs attempt to utilize their state administrative remedies it is impossible to tell whether the Alabama Medicaid transportation program is incapable of meeting their needs.[15]
The court notes that it is undisputed that one class member requested assistance from both the Department of Human Resources and the local Medicaid District Office. (Prince Aff.) He received no help from either agency. Id. The court can see no reason to put the other Plaintiffs through a similar request for assistance when it appears that it would be to no avail. Alabama has no Medicaid funds for non-emergency transportation and no means to provide such transportation. All that it offers recipients is assistance in trying to find a ride from someone else. The issue here is the adequacy of the plan. Alabama's plan is inadequate. A state cannot meet the requirements of the statute and regulations unless it meets the needs of the recipients. The undisputed evidence in this case is that Alabama is not meeting the needs.

b. Participation of the Secretary
Defendants argue that the Secretary's actions in this matter should somehow cause this court to do likewise. The court notes that the Secretary did approve Alabama's Medicaid plan in its entirety as recently as February 1, 1994. Approval by the Secretary, however, does not prevent this court from determining that the plan is in violation of the requirements of the Social Security Act and regulations promulgated thereunder. See, Haynes Ambulance Service, Inc. v. Alabama, 36 F.3d 1074, 1077 (11th Cir.1994); Alabama Hosp. Ass'n v. Beasley, 702 F.2d 955, 961 (11th Cir.1983); Smith v. Vowell, 379 F.Supp. at 160-61. As the court in Smith v. Vowell explained,
[t]he Federal government is sometimes slow [...] to follow through with the enforcement of its own regulations in this area and it would be a grave mistake for a Court to close its eyes to the mistake of equating bureaucratic inaction with actual approval.
*1135 Smith v. Vowell, 379 F.Supp. at 161 (emphasis added).
The Defendant next notes that the Secretary has declined this court's invitation to participate in this suit as an Amicus Curiae. The court regrets the Secretary's decision to not participate in these proceedings. The court would have welcomed the benefit of the expertise of the federal agency that is primarily concerned with problems regarding the compliance with federal Medicaid requirements. The court recognizes that the Supreme Court has said that
[w]henever possible the district courts should obtain the views of [HHS] in those cases where it has not set forth its views, either in a regulation or published opinion, or in cases where there is real doubt as to how the Department's standards apply to the particular state regulation or program.
Rosado v. Wyman, 397 U.S. 397, 406-407, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970) (footnote omitted). However, in Rosado the Supreme Court went on to approve the decision of the district court judge to proceed without the Department after encouraging the Department's participation. Id. at 407, 90 S.Ct. at 1215. This court has encouraged the Secretary to participate, and the Secretary has declined at this point. Thus, the court must proceed without the Secretary's participation.
Proceeding without the Secretary's participation is not unheard of in this sort of case. The court notes that many of the cases challenging state Medicaid transportation plans have proceeded without mentioning the participation of the Secretary. See, Daniels, 1985 WL 56553 (relying on the MAM manual rather than an opinion of the Secretary); Bingham v. Obledo, 195 Cal.Rptr. 142; Fant v. Stumbo, 552 F.Supp. 617. In fact, Smith v. Vowell appears to be the only such case in which the Secretary actually participated.

V. CONCLUSION
Federal law clearly requires a state which wishes to receive Medicaid funds to have a plan which, in actuality, ensures that every eligible recipient receives necessary transportation to and from the doctor and other medical providers. It is recognized that a promise of medical care would be hollow indeed if the person who qualifies for the care because of poverty found it impossible, for the same reason, to get to and from the place where the care was to be given. Therefore, if a state elects to receive federal funds from the Medicaid program to provide medical services to its poor citizens, it must also ensure that those citizens have transportation that will enable them to receive the services. This is not an optional benefit, as are some features of the program; it is mandatory.
It is just as clear from undisputed evidence before the court that the current Alabama plan does not provide that assurance. Viewing the evidence in the light most favorable to the Defendants, it is without question that Alabama's plan fails to provide any method of ensuring non-emergency transportation when efforts at obtaining it from non-paid volunteers fail. Because of that, the requirement of ensuring necessary transportation to every recipient is not met.
A State has absolute discretion in deciding whether to provide free medical care to its poor. It does not have to participate in the federal Medicaid program. But, if it chooses to participate and to receive money from this federal program, as Alabama has done, it is required to abide by federal regulations.
Much latitude and discretion is given to a state in determining how best to implement its Medicaid program. Some things are optional. Others, such as transportation, are mandatory. Since transportation is mandatory, the latitude and discretion is given in determining how to ensure necessary transportation to and from providers for every recipient, not whether to do so.
Although some might argue that scarce Medicaid funds would be better utilized if allocated to services rather than to transportation, that is a policy argument best directed to Congress. The court must apply federal law as it exists, and that law requires transportation. If the State of Alabama intends to continue to ask for and accept Medicaid funds, it is time for it to take the necessary steps to come into compliance with the law.
*1136 For the reasons stated above, the court finds that the current Alabama Medicaid plan fails to meet federal requirements for providing necessary non-emergency transportation to Medicaid recipients, and that because of that the Plaintiffs and the class they represent are being deprived of rights secured by federal law. Therefore, they are entitled to a remedy pursuant to 42 U.S.C. § 1983 and to summary judgment as to liability in this case, and it is so ORDERED.
It is further ORDERED, since the State of Alabama has elected to be a participant in the federal Medicaid program, that the Defendants submit to the court within thirty days from the date of this Memorandum Opinion and Order a plan which will ensure that every Medicaid recipient in Alabama will have necessary transportation to and from health care providers. Upon submission of the plan, the court will set a time for response by the Plaintiffs and will enter such other orders as may be appropriate for consideration of the remedy aspect of this case.

ORDER
This lawsuit was filed on November 2, 1994. Plaintiffs alleged that the state of Alabama had failed to ensure necessary, non-emergency medical transportation to them and other Medicaid recipients. On July 10, 1995, the Court granted summary judgment in favor of the plaintiffs on the issue of liability and ordered the defendants to submit to the Court "a plan which will ensure that every Medicaid recipient in Alabama will have necessary transportation to and from health care providers."
The defendants submitted a proposed plan on August 9, 1995. In response to objections raised by the plaintiffs, the defendant's provided additional details about how they intended to implement the plan. On September 5, 1995, the Court held a status conference during which the differences between the parties were narrowed. Following the status conference, the parties were able to resolve their remaining differences and to agree upon this remedial order.
Pursuant to the consent of the parties, it is hereby ORDERED that:
a. the defendants' August 9, 1995 Plan for Non-Emergency Medical Transportation is hereby approved, except as otherwise noted herein;
b. the defendants shall fully implement their Plan by January 1, 1996;
c. the procedures for giving notice set out in the Defendants' September 1, 1995 Reply to Plaintiffs' Response to Defendants' Plan for Non-Emergency Medical Transportation are hereby approved; in order to ensure that the Plan is fully operational by January 1, 1996, the process of providing notice shall be complete by December 15, 1995; the content of all notices shall be submitted to the plaintiffs at least 14 days in advance; the plaintiffs shall have 2 business days to submit any objections to the adequacy of the notice in question; the Court will promptly resolve any differences regarding notice provisions that cannot be resolved by the parties;
d. defendants shall meet with staff to establish the requirements of a voucher system as proposed in their Plan; the defendants shall draft a solicitation to be mailed to banks in Alabama that can provide vouchers for reimbursement of transportation expenses; prior to the completion of the solicitation, the defendants shall submit it to the plaintiffs for comment; the solicitation shall be completed by October 13, 1995; the defendants shall allow the banks interested in submitting proposals 30 days in which to submit their proposals for providing their services; the defendants shall review the proposals submitted, select the most qualified provider, and enter into a contract to administer said voucher system after submitting the contract to the plaintiffs for comment;
e. pending implementation of the voucher system and the full implementation of the Plan, the defendants shall assist Medicaid recipients in locating and securing non-emergency medical transportation; the defendants shall document their efforts to provide assistance with respect to each Medicaid recipient who requests assistance or who the defendants' attempt to assist; recipients with serious medical conditions shall be given highest priority;
f. the defendants shall submit reports on their efforts to implement the Plan on October *1137 15, November 15, and December 15, 1995; by January 10, 1996, the defendants shall file a statement with the Court indicating whether they have complied with this Court's order that the Plan be fully implemented by January 1, 1996; thereafter, the defendants' shall submit reports on the operation of the Plan at 30 day intervals beginning February 10, 1996; the Court expects the parties to work out agreements as to what the reports should contain in light of the interest of the plaintiffs in monitoring the implementation of the Plan and the interest of the defendants in avoiding unnecessary reporting requirements; after the July 10, 1996 report, the parties shall meet and discuss whether less frequent reporting is appropriate; if the parties cannot reach agreements regarding the content or the frequency of the reports, the Court will resolve the matter.
Because the defendants are ultimately responsible for the success of any plan, the Court notes that Medicaid recipients have an interest in having the defendants implement a plan that the defendants have designed and have committed themselves to. In the event that experience reflects that the defendants' Plan is inadequate to "ensure that every Medicaid recipient in Alabama will have necessary transportation to and from health care providers," however, the Court will require the defendants to modify the Plan.
NOTES
[1] The court will refer to Willie Mae Harris, Linda Patton, Tanika Patton, John Patton, Tommy Gordon, and Bertha J. collectively as "Plaintiffs." They filed this suit on behalf of themselves and all others similarly situated. On May 19, 1995, the court certified this suit as a class action.
[2] The court notes that Defendants have not filed their own Motion for summary Judgment on the basis of the affirmative defenses enumerated in their Answer, nor have Defendants ever placed these defenses before the court in an argumentative brief. Thus, this court does not reach the contentions contained in the Answer that the regulations relied upon by Plaintiffs violate Article I, § 1 of the Constitution of the United States, Article I, § 8 of the Constitution of the United States, and the Tenth Amendment of the Constitution of the United States.
[3] In Bonner v. City of Prichard, Ala. 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.
[4] Congress has charged the Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health and Human Services with the responsibility of making and publishing such rules and regulations as may be necessary to the efficient administration of the functions with which each is charged under Chapter VII of the Social Security Act. 42 U.S.C. § 1302.
[5] Although it is not immediately apparent from the text of this regulation that it is meant to describe a method of administration that the Secretary found necessary for the proper and efficient operation of the plan, it is clear that is exactly what it is. A small reference number is noted immediately after the text of this regulation: "Sec. 1902(a)(4) of the Act." From the content of the surrounding regulations, it is clear that the Act referred to here is Section XIX of the Social Security Act of 1965. The text of Public Law 89-97, which is the 1965 amendments to the Social Security Act, reveals that Sec. 1902(a)(4) was codified as 42 U.S.C. 1396a(a)(4)(A).
[6] The actual text of this regulation provides that

The agency must offer to the family or recipient, and provide if the recipient requests
(a) Necessary assistance with transportation as required under § 431.53 of this chapter; and
(b) Necessary assistance with scheduling appointments for services.
42 C.F.R. § 441.62 (emphasis added).
[7] See, Harris v. James, 883 F.Supp. 1511 (M.D.Ala.1995).
[8] Pennsylvania residents eligible to receive psychiatric partial hospitalization services subsidized by Medicaid brought a class action suit challenging the state plan for Medicaid transportation services. Morgan v. Cohen, 665 F.Supp. at 1165. Pennsylvania had implemented a variety of plans for the provision of transportation to the recipients, but it had proposed a plan that delegated to health service providers the task of administrating the transportation plan. The court held that Pennsylvania had the responsibility for establishing sufficient transportation networks across the state and that the proposed plan failed to fulfill the state's responsibility.
[9] Recipients of services under the California Medicaid program sued the state Medicaid agency seeking to enjoin the agency from operating the program in a manner that fails to assure necessary transportation for recipients to and from health providers. Bingham v. Obledo, 195 Cal.Rptr. at 143-44. California's only transportation plan was solely applicable to a limited group of recipients who were too severely disabled to ride in automobiles and buses. Id. 195 Cal.Rptr. at 144. California argued that even though its written plan was incomplete it should be allowed to offer evidence that in actual practice it does assure necessary transportation to Medicaid recipients, but the California Court of Appeals rejected this proposition and affirmed the trial court's grant of summary judgment in favor of the recipients. Id. 195 Cal.Rptr. at 145. Thus, California's plan for transportation was deemed inadequate.
[10] The state of Kentucky proposed the adoption of an administrative regulation by the terms of which transportation of Medicaid recipients for treatment would in most circumstances be limited to four trips per month. Fant v. Stumbo, 552 F.Supp. at 618. Recipients of the transportation services sought to enjoin the adoption of this plan. Id. The court concluded that "any regulation which seeks to limit transportation for necessary medical treatment is contrary to federal statutes and regulations and is thus invalid." Id. at 619.
[11] The specific regulation at issue in the Vowell case was set forth in 45 C.F.R. § 249.10 which provided that

(a) State Plan Requirements. A state plan for medical assistance under Title XIX of the Social Security Act must: (5) ... specify that there will be provision for assuring necessary transportation of recipients to and from providers of services and describe the methods that will be used.
Smith v. Vowell, 379 F.Supp. at 149. The court notes that the content of this regulation is substantially identical to the regulations at issue in this case.
[12] These modifications included: enlarging the availability of ambulance transportation, requiring the state agency to notify a recipient when a transportation request is denied, and discarding a rule that recipients must call to reconfirm appointments.
[13] To the extent that Defendants try to distinguish Smith v. Vowell by pointing out that Black has been hired to serve full time as the person charged with management and supervision of the Medicaid transportation program in Alabama, the court notes that Black's role is not described anywhere in the Alabama plan, nor is there evidence before this court that he has made an appreciable difference in the efficacy of the admittedly inadequate Alabama plan.
[14] In August 1983, the Department of Health and Human Services noted that Alabama's compliance with 42 C.F.R. § 431.53 was a problem. (Ptf.Ex. 8).

In September 1993, Vicki Huff sent a note to David Toney, then Commissioner of the Alabama Medicaid Program, in which she said
I do not see how we can refuse medically necessary ambulance transportation to freestanding dialysis facilities. Even if we had an operational [non-emergency transportation] program ambulance transportation for some recipients would be indicated.
HCFA called on Sept. 9, the date we were to give them a response. I need to get back with Rod Blum today. It's going to be difficult to stall much longer.
Thanks in advance for your guidance.
(Ptf.Ex. 6) (emphasis added).
As recently as April 26, 1994, Russ Black, the Program Manager for the Alabama Medicaid Transportation Program sent a Memorandum to David Toney, then Commissioner of the Alabama Medicaid Program, in which he stated
On March 22, 1994, the Non-emergency Transportation (NET) Proposal was forwarded to your office. Since that date, Medicaid has been besieged with daily inquiries about current and future NET initiatives by prospective providers. I have been able to satisfy many of the callers with a verbal statement. I explain to them that we met in concert with a Non-Medicaid Task Force and together we developed a proposal that was presented to you for review. We have also had several inquiries from non-Medicaid NET Task Force members seeking the result of your decision and/or a status update. For an update, I ask that they call back ever 3-4 weeks. On occasion, come callers have stated that they felt that we were stalling them and demanded a more decisive answer. Calls of this nature I have referred to your staff.
I am well aware your time is limited and that Medicaid has numerous "irons in the fire". However, unless I hear differently from you, I will continue with the usual rhetoric.
(Ptf.Ex. 24).
[15] In ruling on the Motion to Dismiss, the court held that Plaintiffs need not exhaust their state administrative remedies prior to bringing suit under Section 1983. See, e.g., Patsy v. Board of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); Alacare, Inc.-North v. Baggiano, 785 F.2d 963, 967-69 (11th Cir.), cert. denied, 479 U.S. 829, 107 S.Ct. 111, 93 L.Ed.2d 59 (1986).