**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 94-60449.

Jose GRACIA, et al., Plaintiffs-Appellants, Cross-Appellees,

and

Healthsouth Rehabilitation Center, Intervenor-Appellant, Cross-Appellee,

v.

BROWNSVILLE HOUSING, et al., Defendants-Appellees, Cross-Appellants.

Feb. 14, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, JOLLY and DENNIS, Circuit Judges.

PER CURIAM:

This appeal arises from a terrible accident. In the summer of 1988, the Jose Gracia family was visiting Ezequiel Gracia, a relative, who was a resident of the Victoria Gardens Housing Project, a public housing project in Brownsville, Texas. During the visit, four children were playing in Mr. Gracia's hammock, which was strung between two trees near his apartment. One of the trees, a decayed avocado tree over twenty feet high, collapsed and fell on the children. One of Jose Gracia's children was killed and another suffered paralysis and permanent brain damage. This case presents the primary question, as it relates to jury instructions, whether the Brownsville Housing Authority ("BHA") was covered under

1

the Texas Tort Claims Act at the time of the accident. The answer to this question determines the standard of care the BHA owed to the Gracia children.

## I

Jose Gracia ("Gracia") initially filed this action in state court seeking damages under Texas landlord/tenant principles. The case was removed to federal court when Gracia added a claim under 42 U.S.C. § 1983. Gracia named the following defendants: the BHA; the City of Brownsville[1]; Raul Trevino ("Trevino"), individually and as Executive Director of the BHA; and Genovevo Rubalcaba ("Rubalcaba"), individually and as Superintendent of Maintenance of the BHA.

The BHA moved for summary judgment but the district court denied the motion. The case then went to trial and was submitted to the jury on special interrogatories. The jury found no liability. The court then granted a directed verdict in favor of the individual defendants in their individual capacities and entered judgment dismissing the complaint. Gracia's motion for a new trial was denied.

On appeal, Gracia argues first, that, with respect to the state law claims, the jury charge did not state the correct standard of care; second that, with respect to the section 1983 claim, the jury instructions incorrectly conditioned consideration of the claim upon a finding of state law negligence; and, finally,

---

[1]The City of Brownsville settled prior to trial and was dismissed from this action.

that, with respect to the individual defendants, the directed verdict was error.  The BHA filed a cross-notice of appeal asserting that the district judge erred in denying the BHA summary judgment on Gracia's section 1983 claim.  These appeals are now before the court.

II

A

The initial point we address is whether the first interrogatory submitted to the jury correctly stated the applicable standard of care owed by the BHA to the Gracia children.[2] Specifically, we ask:  Did the defendants' duty of care to the visiting Gracias arise only if the defendants had actual knowledge of the danger posed by the tree or did the duty of care arise if the defendants had constructive knowledge of the danger, i.e., if the defendants, by the exercise of reasonable care, should have known of the danger.  The district court instructed the jury that the defendants must have possessed actual knowledge of the dangerous tree in order to be held liable.  Whether the district

---

[2]The first interrogatory read:

> Do you find from a preponderance of the evidence that any of the named Defendants were negligent?
>
> You are instructed that any of the individuals named were negligent if:
>
> A) The tree posed an unreasonable risk of harm;  and
>
> B) *The Defendants knew of the danger;*  and
>
> C) The Defendants failed to exercise ordinary care to eliminate the danger.

court erred in its actual knowledge instruction depends upon whether the Texas Tort Claims Act applied to the BHA at the time of the accident.[3]

The plaintiffs argue that the BHA, at the time of this

---

[3]The Texas Tort Claims Act provides:

> § 101.022. Duty Owed:  Premise and Special Defects
>
> a) If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

Tex. Civ. Prac. & Rem.Code Ann. § 101.022 (West 1986).  A private person owes a licensee only the duty to refrain from "injur[ing] a licensee by willful, wanton or grossly negligent conduct, and [to] use ordinary care either to warn a licensee of, or to make reasonably safe, *a dangerous condition of which the owner is aware* and the licensee is not." *See State Dep't of Highways & Public Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992) (emphasis added).

If the Act does not apply, the BHA stands in the shoes of a private litigant.  The standard of care for private persons in the landlord/tenant context is stated in *Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 515 (Tex.1978).  In *Parker,* the court held that a landlord owed the following duty with respect to areas of leased premises that lessees were entitled to use even though they remained in the landlord's control:

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, *if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein* and could have made the condition safe.

*Parker,* 565 S.W.2d at 515 (quoting Restatement (Second) of Torts § 360) (emphasis added).

4

accident, did not come within the scope of the Texas Tort Claims Act because the BHA was not a unit of government under the terms of the statute; instead, the BHA was only a subdivision of the city, and it performed only a proprietary—not a governmental—function.[4] We do not agree.[5]

We first turn to examine the applicable law at the time the accident occurred in the summer of 1988. Under the Texas Tort Claims Act, then and now, an "institution, agency, or organ of government the status and authority of which [is] derived from the Constitution of Texas or from laws passed by the legislature under the constitution" is considered a unit of government. Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2)(D) (West 1986). The statute creating housing authorities reads, in relevant part,

(a) A housing authority is created in each municipality in the state.

---

[4]Under the Texas Tort Claims Act, a city is protected by the statute only with respect to the performance of governmental functions, not the performance of proprietary functions. Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a) (West 1996).

[5]Under current Texas law, there is no question but that the BHA is covered under the Texas Tort Claims Act. In August 1989, a statute was enacted specifically providing that "[f]or all purposes, including the application of the Texas Tort Claims Act ..., a housing authority is a unit of government and the functions of a housing authority are essential governmental functions and not proprietary functions." Tex. Local Gov't Code Ann. § 392.006 (West Supp.1997). Gracia argues that this statute is inapplicable because this cause of action accrued prior to its effective date. The BHA counters that the statute is merely a codification of preexisting law and that the BHA has always been a unit of government for purposes of the Texas Tort Claims Act. Alternatively, the BHA argues that the statute applies to all actions filed after its effective date and, therefore, applies to this action. We find it unnecessary to address the applicability of this statute to the present action.

5

(b) A municipal housing authority is a public body corporate and politic.

(c) A municipal housing authority may not transact business or exercise its powers until the governing body of the municipality declares by resolution that there is a need for the authority.

Tex. Local Gov't Code Ann. § 392.011 (West 1988).[6] Thus, a housing authority is created by the Texas legislature as an entity independent of the city and thereafter, the respective city, also through a legislative grant of power, activates the housing authority. Applying this statute to the definition of a governmental unit in the Act, it seems quite clear that the BHA is an agency that derives its status and authority from an act of the Texas legislature. It is true, of course, that this status and authority lies dormant until the city acts. This power of the city that activates the housing authority, however, derives from a grant from the legislature. Thus, in every sense, it can be said that all status and authority enjoyed by the housing authority is derived from the Texas legislature. Consequently, the BHA is covered under the Act.

Indeed, this appeal presents a case that is closely analogous to *Huckabay v. Irving Hosp. Auth.,* 879 S.W.2d 64 (Tex.App.1993). There, the court held that the hospital authority was a unit of government for purposes of the Tort Claims Act, because the authority fell within the definition of "governmental unit" under the Act. *Id.* at 66. *See also Edinburg Hospital Authority v.*

_____

[6]This statute was enacted as Acts 1987, 70th Leg. Ch. 149, § 1 and took effect on September 1, 1987. Thus, the statute was in effect at the time of the accident at issue.

*Trevino*, No. 95-0939, 1997 Westlaw 47912 (Tex. 1997). Specifically, the court found that the City of Irving had created the Authority pursuant to a statute authorizing such entities and that, therefore, the Authority was an "institution, agency or organ of government the status and authority of which [was] derived from the constitution of Texas or from laws passed by the legislature under the constitution." *Id.* The BHA occupies a position which, in its essence, is the same as the Hospital Authority in *Huckabay.*

It therefore seems indisputable that the BHA falls within the express terms of the Texas Tort Claims Act. Because we conclude that the BHA is entitled to the protection of the Texas Tort Claims Act, we find that the jury interrogatory correctly stated the standard of care owed by the BHA to the visiting Gracias.

B

As we have noted, the case was submitted to the jury on special interrogatories. The first interrogatory, discussed above, asked the jury whether any of the defendants were negligent. The jury instructions then conditioned consideration of Gracia's section 1983 claim upon a finding of negligence. Specifically, the jury was instructed not to consider or answer any additional interrogatories unless the first interrogatory on negligence was answered in the affirmative.

Gracia contends that the interrogatory conditioning the jury's consideration of the section 1983 federal claim upon a finding of negligence under state law was erroneous. We will assume, without deciding, that the instruction was erroneous. We nevertheless

7

conclude that, because Gracia failed to establish a prima facie case under section 1983, any error was harmless under Federal Rule of Civil Procedure 61.[7]

Gracia's section 1983 claim, in its essence, alleges that the defendants deprived his children of a right under federal law to have the housing project maintained in a safe condition. We reject this basis as being insufficient to state a claim under section 1983. Indeed, we find that the Fair Housing Act and its implementing regulations, relied upon by Gracia, do not confer on the visiting Gracia children any enforceable rights.

We first look to the relevant portion of section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws shall be liable to the party injured in an action at law....

In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Court recognized that section 1983 provided a cause of action to redress violations of federal statutes and not solely violations of the Constitution. No cause of action exists,

_____

[7]Federal Rule of Civil Procedure 61 reads,

> No error ... or defect ... in anything done or omitted by the court ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

8

however, "where the statute in question does not "create enforceable rights, privileges, or immunities within the meaning of section 1983.' " *Suter v. Artist M.,* 503 U.S. 347, 365, 112 S.Ct. 1360, 1371, 118 L.Ed.2d 1 (1992) (quoting *Wright v. Roanoke Redev. & Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)).

Gracia alleged a right, or rights, derived from federal regulations enacted pursuant to the Fair Housing Act. Gracia's argument is defective in several respects.

First, it is not clear that regulations can be considered "laws" for purposes of creating a right actionable under section 1983. *See, e.g., Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 437-39, 107 S.Ct. 766, 778, 93 L.Ed.2d 781 (1987) (O'Connor, J., dissenting).

Second, even if regulations may create actionable rights, there is no evidence that any of the cited regulations have been violated by the BHA or its employees. Gracia specifically relies upon 24 C.F.R. § 966.4. This regulation, however, only requires that certain provisions be contained in leases entered into under the Act. *See* 24 C.F.R. § 966.4 (stating "[a] lease shall be entered into between the [public housing agency] and each tenant ... which shall contain the provisions described hereinafter"). Although it is true that the regulation requires that a provision be included in the lease requiring the housing agency to maintain common areas in a safe condition, there is no evidence that the BHA failed to include the provision in the subject lease. *See* 24 C.F.R. §

9

966.4(e)(4). In fact, the lease between Ezequiel Gracia and the BHA contained a provision that stated,

> [t]he authority agrees to keep the building facilities, common areas and grounds not otherwise assigned to the Tenant for maintenance and upkeep, in a clean and safe condition and to make necessary repairs to the premises.

It appears that the failure to comply with this term of the lease may give rise to a breach of contract action in favor of Ezequiel Gracia. This provision, however, does not give rise to a section 1983 action in favor of persons who are not even parties to the lease.

This point brings us to a third problem with Gracia's claim under the regulations: His children are not within the scope of the regulations that allegedly create the federal right upon which he relies. The Gracia children were not residents of the housing project and so the obligations of the BHA do not run to them. Gracia attempts to rely upon 24 C.F.R. § 966.4(d)[8] to support his claim, but that provision only requires that, with respect to use and occupancy rights, the lease recognize the *tenant's* right to make "reasonable accommodations" for his guests and does not confer any enforceable rights upon the Gracia children.

In sum, we conclude that Gracia failed to state a prima facie

---

[8]This regulation is titled "Tenant's right to use and occupancy" and reads, in relevant part:

> The lease shall provide that the tenant shall have the right to exclusive use and occupancy of the leased unit by the members of the household authorized to reside in the unit in accordance with the lease, including reasonable accommodation of their guests.

24 C.F.R. 966.4(d)(1).

case under section 1983 because he failed to demonstrate that any act or failure to act by the BHA deprived his children of any rights to which they were entitled under federal law. Thus, any error that occurred as a result of the trial court's structuring of the jury interrogatories on the section 1983 claim was harmless.

III

In conclusion, we hold that the jury was properly instructed with respect to Gracia's state law negligence claim because the Texas Tort Claims Act encompasses the BHA and, thus, the applicable standard of care was set out in the jury interrogatory. Additionally, we conclude that any error in connection with the instructions regarding Gracia's section 1983 claim was harmless because Gracia failed to state a viable claim under the section.[9] The judgment of the district court is therefore

AFFIRMED.

DENNIS, Circuit Judge, concurring:

While I concur in the result reached by the majority, I am troubled by the disposition of the § 1983 claim against the authority in Section II(B) of the majority opinion. In *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the Supreme Court held that

---

[9]Our holdings as to the first two issues on appeal moot Gracia's third point of error—that the trial judge erred in granting directed verdicts in favor of the individual defendants in their individual capacities. Gracia failed to state a claim under section 1983, thus, there could be no individual liability as to that claim. The state law claims were premises liability claims, and because neither Trevino nor Rubalcaba were possessors of the property they owed no individual duty to the Gracia children.

11

tenants living in low-income housing projects owned by a public housing authority, who alleged that the housing authority overbilled them for their utilities and thereby violated a rent ceiling imposed by the Brooke Amendment to the Housing Act of 1937 (42 U.S.C. § 1437(a)) and the implementing regulations of the federal Department of Housing and Urban Development (HUD), have a private cause of action under 42 U.S.C. § 1983. The Court stated: "In our view, the benefits Congress intended to confer on tenants are sufficiently specific and definite to qualify as enforceable rights under *Pennhurst* and § 1983, rights that are not, as respondent suggests, beyond the competence of the judiciary to enforce." *Id.* at 432, 107 S.Ct. at 774-75 (footnote omitted).

I understand that we are dealing here with a different section of the Housing Act of 1937 and a different implementing regulation, but the *Wright majority* held, however, that nothing in the Housing Act or the Brooke Amendment evidences that Congress intended to preclude the tenants' § 1983 claims against the authority, and that the provision in the HUD regulations for a "reasonable" allowance for utilities was sufficiently specific and definite to qualify as enforceable rights under *Pennhurst* and § 1983. I am uncomfortable in relying partially on the *Wright* dissent, as the majority opinion does, in a case under the same Act and in not closely following or applying by analogy the *Wright* majority's analysis to the Act's provisions and the HUD regulation at issue in our case. I realize that the Supreme Court now follows a different approach and does not easily recognize implied private causes of action under federal

12

statutes, but I do not believe we should apply the new approach to a provision of the Housing Act and a regulation thereunder in view of *Wright.*

Instead, we should hold simply that the Gracias failed to establish a prima facie case under § 1983 because under *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), and *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), no reasonable juror could have found that the housing authority's policy makers were "deliberately indifferent" to the safety needs of the tenants with respect to the condition of trees on the premises. In light of the above observations, the judgments in favor of Trevino and Rubalcaba should be affirmed on the basis of the Texas Tort Claims Act § 101.106, lack of personal participation, and their qualified immunity.