KRAVITCH, Senior Circuit Judge,
dissenting:
I disagree with the reasoning and the result of the majority opinion on several grounds. First, the majority improperly decides an issue that, in my view, the State waived. Moreover, the majority’s analysis of enforceable rights violates established law, which holds that a federal statute and a validly promulgated regulation can create an enforceable right, actionable under 42 U.S.C. § 1983, if the statute and regulation together meet the three prongs of the test reiterated in Wilder v. Virginia Hosp. Ass’n, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (citations omitted). Finally, even if the majority’s new approach to enforceable rights were correct, the plaintiffs in this case still have demonstrated an enforceable right to “necessary transportation ... to and from providers” under the Medicaid statute, 42 U.S.C. § 1396a(a), and the applicable regulation, 42 C.F.R. § 431.53. Accordingly, I respectfully dissent.
I.
In its initial brief on appeal, the State asserted that the plaintiffs have no right to transportation under the Medicaid statute. The State based this argument solely on its claim that the regulation in question exceeds the scope of the enabling statute. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). The State did not challenge the district court’s holding that regulations deemed valid under Chevron can be considered together with the relevant statute under all three prongs of the Wilder test.[1] The majority thus errs in resolving a claim that the State abandoned.[2]
*1013 II.
Rather than addressing the Chevron question raised by the State in its initial brief, the majority thoroughly examines several Supreme Court cases[3] and discovers in them a new framework for determining whether federal statutes and regulations create rights actionable under § 1983. Using this framework, the majority concludes that the plaintiffs do not have an enforceable right to transportation under § 1983. In my view, this analysis is contrary to governing Supreme Court precedent.
Plaintiffs asserting a violation of federal law under § 1983 must first demonstrate that an enforceable federal right exists. According to the established three-prong test restated in Wilder, such an enforceable right exists if: 1) the statutory provision is intended to benefit the plaintiffs;' 2) the provision imposes a binding obligation on the governmental unit; and 3) the interest asserted by the plaintiffs is not “too vague and amorphous” for judicial enforcement. 496 U.S. at 509, 110 S.Ct. at 2517. See also Blessing v. Freestone, — U.S. -, -, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). If these .three conditions are met, then a § 1983 remedy is presumptively available.[4] Furthermore, as demonstrated infra, even if a statutory provision alone does not satisfy the Wilder test, the statutory provision and a valid regulation promulgated thereunder may satisfy the test and thus confer a specific enforceable right.
The majority, however, develops a new approach to analyzing whether a statute and a valid regulation together create an enforceable right. It divines a stringent requirement that plaintiffs must satisfy in order to demonstrate that an enforceable right exists: “In our view, the driving force behind the Supreme Court’s case law in this area is a requirement that courts find a Congressional intent to create a particular federal right.”
From this general premise, the majority derives the following test for determining whether regulations can help create rights actionable under § 1983. A regulation can be used to create an enforceable right if the statute itself confers an enforceable right and the regulation “merely further defines or fleshes out the content of that right.” A regulation, however, is “too far removed from Congressional intent” and thus cannot help create an enforceable right if either: 1) the regulation defines the content of a statutory provision that itself creates no enforceable right; or 2) the regulation “goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying [that] provision.”
The majority’s framework is based primarily on Wright v. City of Roanoke Redevelopment and Hous. Auth., 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). In that case, a statutory provision created an enforceable right to have rental payments capped at a certain percentage of income, and a regulation defined rent to include charges for “reasonable amounts of utilities”. Id. at 419-20, 107 S.Ct. at 768-69. The Court held that “the regulations gave low-income tenants an enforceable right to a *1014 reasonable utility allowance.... ” Id. at 420 n. 3, 107 S.Ct. at 769 n. 3. Generalizing from this single ease, the majority concludes that a regulation can help create an enforceable right only in those cases, as in Wright, where the statute standing alone confers an enforceable right, and the regulation merely “fleshes out” the content of that right.
The majority’s approach, however, is fundamentally flawed. By requiring § 1983 plaintiffs to demonstrate “Congressional intent to create a particular federal right,” the majority appears to depart from the three-prong Wilder test.[5] According to Wilder, § 1983 plaintiffs may assert an enforceable right under a statute simply by proving that the provision in question satisfies each of the three prongs. 496 U.S. at 509, 110 S.Ct. at 2517. Under this test, the only Congressional intent that the plaintiffs must show is the intent to benefit them. The majority, by contrast, would impose on § 1983 plaintiffs the more stringent burden of showing that Congress affirmatively intended to create a specific federal right enforceable under § 1983. This requirement is contrary to established law.
The majority appears to have imported into the § 1983 context the framework established by Cort v. Ash, 422 U.S. 66, 78-85, 95 S.Ct. 2080, 2088-91, 45 L.Ed.2d 26 (1975), for determining whether a federal statute creates an implied right of action. As the Court held in Wilder:
In implied right of action cases, we employ the four-factor Cort test to determine whether Congress intended to create the private remedy asserted for the violation of statutory rights. The test reflects a concern, grounded in separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes.
496 U.S. at 509 n. 9, 110 S.Ct. at 2517 n. 9 (citations and internal quotation omitted). Such an affirmative showing of specific Congressional intent is not necessary to establish a § 1983 cause of action, however. The Wilder Court continued;
Because § 1983 provides an alternative source of express congressional authorization of private suits, these separation-of-powers concerns are not present in a § 1983 case. Consistent with this view, we recognize an exception to the general rule that § 1983 provides a remedy for violation of federal statutory rights only when Congress has affirmatively withdrawn the remedy.
Id. (citations and internal quotation omitted). By demanding that § 1983 plaintiffs establish that Congress specifically intended to create an enforceable right, the majority thus fundamentally alters the law governing § 1983 causes of action.
Furthermore, the majority’s treatment of regulations in its enforceable rights analysis is inconsistent with Supreme Court precedent and with the approach taken by most courts of appeals. Under established law, even if a statutory provision alone does not confer a specific enforceable right, the statutory provision together with valid regulations promulgated thereunder may create such a right. The proper methodology, employed by the Supreme Court and by the courts of appeals in at least eight circuits,[6] is to consider both the statute and its implementing *1015 regulations in determining whether an enforceable right exists under the Wilder test and in defining the precise contours of such a right.
Thus, courts consistently have considered regulations under the first prong of the Wilder test, which provides that a statute must be intended to benefit the plaintiffs in order to create an enforceable right. In Blessing, for example, the Court evaluated whether two statutory provisions were intended to benefit the plaintiffs by analyzing the statutory provisions in conjunction with their implementing regulations.[7] Courts of appeals also have considered regulations under the first prong of the Wilder test.[8] It is proper, therefore, to refer to an agency’s interpretation of a statute in deciding whether Congress intended to benefit the plaintiffs.
Similarly, courts consistently have considered regulations under the second prong of the Wilder test, which provides that a statute must be binding in order to create an enforceable right. In Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), for example, the Court examined the regulations promulgated under the Adoption Assistance and Child Welfare Act to determine whether the statute created a duty binding on the State. 503 U.S. at 361, 112 S.Ct. at 1369 (“The regulations ... do not evidence a view that § 671(a) places any requirement for state receipt of federal funds other than the requirement that the State submit a plan to be approved by the Secretary.”).[9] In Wilder, the Court cited and described regulatory provisions to support its conclusion that participating states have binding obligations to adopt reasonable and adequate Medicaid rates. 496 U.S. at 512 & 513 n. 11, 110 S.Ct. at 2519 & n. 11 (citing 42 C.F.R. §§ 430.35, 447.253(a),(b) (1989)). Courts of appeals also have considered regulations under the second prong of the Wilder test.[10]
Finally, courts .consistently have considered regulations under the third prong of the Wilder test, which provides that a statute does not create an enforceable right if the interest asserted is too “vague and amorphous” for judicial enforcement.[11] In Wilder itself, the Court examined a statutory provision that required a State to pay hospitals such “rates [that] the State finds are reasonable and adequate.” 496 U.S. at 512, 110 S.Ct. at 2519 (citing 42 U.S.C. § 1396a(a)(13)(A) (1982 ed., Supp. V)). As the Court subsequently explained in Suter, the Wilder Court
*1016 held that the Boren Amendment actually required the States to adopt reasonable and adequate rates, and that this obligation was enforceable by the providers. We relied in part on the fact that the statute and regulations set forth in some detail the factors to be considered in determining the methods for calculating rates.
503 U.S. at 359, 112 S.Ct. at 1368 (emphasis added) (citing Wilder, 496 U.S. at 519 n. 17, 110 S.Ct. at 2522 n. 17). Courts of appeals also have considered regulations under the third prong of the Wilder test.[12]
By concluding that the statute, standing alone, must meet all three prongs of the Wilder test, the majority thus departs from Supreme Court precedent and the established practice of most courts of appeals. In support for its novel position, the majority merely cites a passage from a Fourth Circuit panel decision, Smith v. Kirk, 821 F.2d 980, 984 (4th Cir.1987),[13] an opinion which was written prior to Wilder, Suter, and Blessing, and which has not been cited by any other court of appeals to date. On the other hand, the Supreme Court and eight circuit courts of appeals have considered regulations in determining whether a statutory provision creates enforceable rights, and they have used regulations to determine the precise count-ours of those rights.[14] The majority thus erects its analysis upon a very thin, and, in my view, insufficient, legal foundation.
III.
Whether analyzed under the majority’s framework or under the established Wilder test, the plaintiffs have an enforceable right to transportation to and from Medicaid providers. This enforceable right is conferred by 42 U.S.C. § 1396a(a) and 42 C.F.R. § 431.53, a valid regulation promulgated thereunder.
A.
According to 42 C.F.R. § 431.53, which appears under Part 431, Subpart B, entitled “General Administrative Requirements”:
A State plan must—
(a) Specify that the Medicaid Agency will ensure necessary transportation for recipients to and from providers; and
(b) Describe the methods that the Agency will use to meet this requirement.
This administrative transportation requirement has existed in almost identical form since the very beginning of the Medicaid program.[15]
*1017 According to the Secretary, the transportation regulation was promulgated pursuant to several subsections of 42 U.S.C. § 1396a(a), including (4), (8), and (19). Medical Assistance Manual, MSA-PRG-17, § 6-20-20.A (June 6, 1972), Secretary’s Exhibit A at 1 (also basing regulation on § 1396a(a)(l),(10), and (23)). These subsections state:
A State plan for medical assistance must—
******
(4) provide (A) such methods of administration (including methods relating to the establishment and maintenance of personnel standards on a merit basis ... ) as are found by the Secretary to be necessary for the proper and efficient operation of the plan ...; '
******
(8) provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals;
:¡: * * * * *
(19) provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients;
42 U.S.C. § 1396a(a) (emphasis added).
The transportation regulation is a valid exercise of the broad rule-making authority granted to the Secretary by 42 U.S.C. § 1302(a). As the Secretary has explained, “The requirement for transportation is based on experience and recognition that the needy will not be able to obtain necessary and timely medical care if they are without the means of getting to the providers of service.” Medical Assistance Manual, MSA-PRG-17, § 6-20-20.A (June 6, 1972), Secretary’s Exhibit A at 2. The transportation regulation thus is a reasonable interpretation of § 1396a(a)(4),(8), and (19) because the provision of transportation services is an essential element of plan administration[16] and because Medicaid recipients can only receive medical assistance, care, and services if they have adequate transportation. Moreover, Congress effectively has consented to the Secretary’s contemporaneous construction of the original Medicaid statute. See Equal Employment Opportunity Comm’n v. Associated Dry Goods Corp., 449 U.S. 590, 600 n. 17,101 S.Ct. 817, 823 n. 17, 66 L.Ed.2d 762 (1981) (holding that, where Congress for fifteen years never expressed its disapproval of EEOC’s contemporaneous construction of its founding statute, Congress’s silence “suggests its consent to the Commission’s practice”). Because a regulation is valid if it is based on a permissible construction of the statute and is not contrary to clearly expressed Congressional intent, see Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82, the transportation regulation represents a valid exercise of agency authority. See Daniels v. Tennessee Dep’t of Health and Environment, No. 79-3107, 1985 WL 56553, at *2 and n. 1 (M.D.Tenn. Feb.20, 1985) (stating that transportation regulation is within agency authority); Smith v. Vowell, 379 F.Supp. 139, 152-53 (W.D.Tex.), aff'd, 504 F.2d 759 (5th Cir.1974) (pre-Chevron case concluding that transportation regulation was valid interpretation of statute).
B.
Even if the majority’s enforceable rights approach were' correct, the plaintiffs in this *1018 case still would have an enforceable right to transportation under 42 U.S.C. § 1396a(a)(8). This statutory provision, standing alone, creates an enforceable right to medical assistance. It plainly satisfies the first two prongs of the Wilder test because it is intended to benefit the plaintiffs and is mandatory on the States.[17] Furthermore, even though the term “reasonable promptness” is arguably vague,[18] § 1396a(a)(8) is specific and definite in its command that “all eligible individuals” be furnished “medical assistance.” Because § 1396a(a)(8) would be judicially enforceable against a State that refused to provide medical assistance to eligible individuals, the statutory provision plainly satisfies the third prong of the Wilder test. Thus, standing alone, § 1396a(a)(8) confers upon the plaintiffs an enforceable right to medical assistance.
Moreover, as determined by the Secretary, see supra Part III.A, eligible individuals must have transportation in order to obtain medical assistance. Transportation to and from medical providers is thus an essential element of the right to medical assistance. Stated another way, the right to medical assistance includes the right to transportation.[19]
Under the majority’s own framework, therefore, the plaintiffs have an enforceable right to transportation. The statute itself confers an enforceable right to medical assistance, and the regulation merely further defines that right to include the right to transportation. This squarely meets the majority’s requirement that “so long as the statute itself confers a specific right upon the plaintiff, and a valid regulation merely further defines or fleshes out the content of that right, then the statute — ‘in conjunction with the regulation’ — may create a federal right as further defined by the regulation.”
Furthermore, the regulation at issue does not violate the majority’s admonition that a regulation that helps to create an enforceable right must not be “too far removed from Congressional intent.” To the contrary, because the agency’s transportation requirement originated contemporaneously with the founding statute, Congress effectively has consented to the regulation. See Associated Dry Goods Corp., 449 U.S. at 600 n. 17, 101 S.Ct. at 823 n. 17. Therefore, even under the majority’s own framework, the plaintiffs have asserted an enforceable right to transportation under 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 431.53.
C.
Similarly, the statutory provisions, considered in conjunction with the transportation regulation, create an enforceable right to transportation under the established Wilder test abandoned by the majority. Although only one of the authorizing statutory provisions, considered together with the regulation, needs to meet the three-part Wilder test in order for the plaintiffs to have an enforceable right to transportation, all three of the cited statutory provisions confer such a right.
First, each statutory provision, viewed in conjunction with the implementing regulation, is intended to benefit the plaintiffs. Both § 1396a(a)(8), requiring medical assistance to be furnished promptly to all eligible individuals, and § 1396a(a)(19), requiring assurances that care and services will be provided in a manner consistent with recipients’ best interests, are plainly intended for the benefit of the plaintiffs, and the transportation regulation is necessary to effectuate this *1019 purpose. Cf. Silver v. Baggiano, 804 F.2d 1211, 1216-17 (11th Cir.1986) (concluding that Medicaid statute in general and “free choice” provision, 42 U.S.C. § 1396a(a)(23), in particular were intended to benefit Medicaid recipients). Similarly, § 1396a(a)(4), when considered together with the transportation regulation, is intended to benefit the plaintiffs.[20]
Second, the statutory provisions and implementing regulation establish a binding obligation on the States. The language of the statutory provisions and the regulation is mandatory, not hortatory. Moreover, the grant of federal money is unambiguously conditioned on States’ compliance with these provisions. See 42 U.S.C. § 1396c (stating that Secretary can suspend payments where a State plan does not comply with any provision of § 1396a or where the State, in administering the plan, fails to comply substantially with any such provision); cf. Pennhurst State Sch. and Hosp. v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981) (“[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.”). The State is thus bound to “ensure necessary transportation for recipients to and from providers.” 42 C.F.R. § 431.53.[21]
Finally, the interest asserted by the plaintiffs, as defined by the statutory provisions and implementing regulation, is not “too vague and amorphous” for judicial enforcement. In Wilder, the Court explained that an enforceable right may exist even where States have wide discretion:
That the amendment gives the States substantial discretion in choosing among reasonable methods of calculating rates may affect the standard under which a court reviews whether the rates comply with the amendment, but it does not render the amendment unenforceable by a court. While there may be a range of reasonable rates, there certainly are some rates outside that range that no State could ever find to be reasonable and adequate under the Act...'. [E]valuat[ing] a State’s findings with respect to the reasonableness of *1020 its rates ... is well within the competence of the judiciary.
496 U.S. at 519-20, 110 S.Ct. at 2523. Cf. Blessing, — U.S. at---, 117 S.Ct. at 1361-62 (concluding that the statutory and regulatory staffing mandates did not give rise to individualized rights, in part because the .mandates were too vague to be enforceable).
Just as the States in Wilder had wide discretion to establish reasonable and adequate reimbursement rates, so the States in this case have wide discretion in determining the types of transportation services to use in transporting Medicaid recipients.[22] Nonetheless, the transportation regulation unambiguously requires that all Medicaid recipients have transportation to and from their providers. As shown by the district court’s order in this case, the interest asserted by the plaintiffs under the transportation regulation is easily enforceable. See Harris v. James, 896 F.Supp. 1120 (M.D.Ala.1995). The district court found that the State provides ambulance transportation only in very limited circumstances, and that the State merely helps to arrange other transportation that can be obtained without charge through volunteer groups or other sources. Id. at 1132. The State “makes absolutely no provision for those occasions when transportation cannot be arranged in this fashion,” and thus its plan “fails to ensure that every eligible individual will have transportation necessary for access to care under a Medicaid reimbursement scheme.” Id.
Several other federal district courts, as well as at least one state court, also have enforced the transportation regulation.[23] Most notably, the district court in Vowell, in a decision summarily affirmed by the Fifth Circuit, concluded that the predecessor transportation regulation, virtually identical to the existing one, was capable of judicial enforcement:
We read the language of the instant regulation ... as being clear and unambiguous in its command____ [T]he State does not have to “stipulate in advance” every possible mode of transportation since the situation will necessarily differ with each individual. Nevertheless, the command of the language is unmistakable — there must be some inclusive description of the primary modes of transportation that can reasonably be contemplated to be utilized.
379 F.Supp. at 159 (citation omitted). The Vowell court found that the State only provided transportation services in limited circumstances,[24] and thus it was “clear beyond all peradventure of doubt that the Texas State Plan in both form as well as in practice is out of compliance with the applicable Federal regulations ... and guidelines.... ” Id. Because the Fifth Circuit affirmed the Vowell court’s determination that the transportation regulation was judicially enforceable, this court should also find the regulation to be enforceable. See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (holding that all decisions of the Former Fifth Circuit handed down prior to October 1, 1981, are binding on this court); Harris v. Menendez, 817 F.2d 737, 739 & n. 4 (11th Cir.1987) (holding a summary affirmance of district court to be binding under Bonner). The authorizing statute and the transportation regulation thus satisfy the third prong of the Wilder, test.
*1021 Because the statutory provisions and the regulation create an enforceable right to transportation under the three-prong Wilder test, the final question is whether the Medicaid statute itself creates a remedial scheme that is “sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy for suits under § 1983.” Middlesex County Sewerage Auth. v. Nat’l Sea Clammers Ass’n, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). Neither the majority nor the State contends that a sufficient remedial scheme exists here to foreclose a § 1983 remedy.[25] The plaintiffs thus have an enforceable right to transportation, actionable under § 1983.
IV.
Employing either the approach to enforceable rights proposed by the majority or the long-standing framework employed by the Supreme Court, I would hold that the Medicaid statute, 42 U.S.C. § 1396a(a), and the applicable regulation, 42 C.F.R. § 431.53, confer upon the plaintiffs an enforceable right to transportation.
I therefore respectfully DISSENT.

. See Harris v. James, 883 F.Supp. 1511, 1521 (M.D.Ala.1995). In its initial brief on appeal, the State referred to many of the same Supreme Court cases relied on by the majority, see infra note 3, but it did not dispute that regulations could be considered under the three-prong Wilder test. Instead, the State argued that “the Secretary's regulation for transportation services exceeds the mandate of the Congressional statute and, therefore, is not a right within the meaning of§ 1983.” Appellant's Brief at 19.

. An appellant's argument must be in its initial brief in order not to be considered waived. McGinnis v. Ingram Equipment Co., Inc., 918 F.2d 1491, 1496-97 (11th Cir.1990); 20 James Wm. Moore, Moore’s Federal Practice II 328.20[4],[7] (3d ed.1997). See Fed.R.App.P. 28(a) (describing required contents of appellant's brief). A claim absent from an appellant's initial brief is considered abandoned even if the court subsequently requests supplemental briefing on the issue. See Maryland People's Counsel v. F.E.R.C., 760 F.2d 318, 319-20 (D.C.Cir.1985) (Scalia, J.) (deeming an issue waived where a party did not raise it on appeal until after the court requested a supplemental briefing) (citing C. Wright & A. Miller, Federal Rules of Civil Procedure § 1295 (1969)); see also Horsley v. State of Ala., 45 F.3d 1486, 1497 (11th Cir.), cert. denied, - U.S. -, 116 S.Ct. 410, 133 L.Ed.2d 328 (1995) (Hatchett, J., dissenting) (concluding that state waived harmless error argument when it raised claim only in response to the panel’s request for a supplemental briefing). Moreover, the majority does not rely on the Supreme Court’s recent decision in Blessing v. Freestone, *1013 - U.S. -, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), in concluding that a statute and a valid regulation promulgated thereunder may not be considered together under the three prongs of the Wilder test; thus, the fact that the State filed its initial brief prior to Blessing does not excuse the brief's failure to articulate a Wilder challenge. Cf. Fed.R.App.P. 2 advisory committee's note (authorizing courts to relieve litigants of consequences of default where manifest injustice would otherwise result).

. See Blessing v. Freestone, - U.S. -, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992); Wilder, supra; Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989); Wright v. City of Roanoke Redevelopment and Hous. Auth., 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); Pennhurst State Sch. and Hasp. v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

. As the Court held in Golden State, “The burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant. We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right.” 493 U.S. at 107, 110 S.Ct. at 449 (citations and internal quotation omitted). See also Blessing, - U.S. at -, 117 S.Ct. at 1360; Wright, 479 U.S. at 423-24, 107 S.Ct. at 770.

. The majority admits that the Wilder test, recently employed in Maynard v. Williams, 72 F.3d 848, 852 (11th Cir.1996), is still "good law,” but the majority’s actual holding belies that concession.

. The First, Second, Third, Sixth, Seventh, Eighth, Ninth, and District of Columbia Circuits all have found it appropriate to consider regulations in conducting the Wilder inquiry. See Farley v. Philadelphia Hous. Auth., 102 F.3d 697, 702 (3d Cir.1996); Doe by Fein v. Dist. of Columbia, 93 F.3d 861, 867 (D.C.Cir.1996); Tony L. By and Through Simpson v. Childers, 71 F.3d 1182, 1189 (6th Cir.1995), cert. denied, - U.S. -, 116 S.Ct. 1834, 134 L.Ed.2d 938 (1996); City of Chicago v. Lindley, 66 F.3d 819, 827 (7th Cir.1995); Buckley v. City of Redding, Cal., 66 F.3d 188, 192 (9th Cir.1995); Loschiavo v. City of Dearborn, 33 F.3d 548, 552-53 (6th Cir.1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995); Martinez v. Wilson, 32 F.3d 1415, 1421 & n. 4 (9th Cir.1994); Howe v. Ellenbecker, 8 F.3d 1258, 1263 (8th Cir.1993), cert. denied, 511 U.S. 1005, 114 S.Ct. 1373, 128 L.Ed.2d 49 (1994), overruled by Blessing, supra; Albiston v. Maine Comm’r of Human Servs., 7 F.3d 258, 265 (1st Cir.1993), overruled in part by Blessing, supra; Pinnacle Nursing Home v. Axelrod, 928 F.2d 1306, 1313-14 (2d Cir.1991).

. First, the Court held that the detailed statutory and regulatory requirements for States' data processing systems only benefited individuals indirectly and did not give rise to individualized rights to computer services. - U.S. at -, 117 S.Ct. at 1361. The Court also determined that the statutory and regulatory staffing mandates did not give rise to individualized rights, in part because of the tenuous link between increased staffing and the benefits provided to individuals. Id. at---, 117 S.Ct. at 1361-62.

. See Farley, 102 F.3d at 702 (concluding that plaintiff "is an intended beneficiary of [the statutory provision] and its accompanying HUD regulations”); Buckley, 66 F.3d at 192 ("[T]he Act clearly is intended to benefit the plaintiffs. The Act’s regulations unambiguously state a purpose to increase access to waterways for recreational boaters and fishermen.”); Loschiavo, 33 F.3d at 552 ("We have no doubt that the [plaintiffs] ... were intended beneficiaries of this regulation.").

. As described in Part III.C, infra, Congress subsequently overruled this limited interpretation of a State's obligations under the Social Security Act. See 42 U.S.C. § 1320a-2.

. See Farley, 102 F.3d at 702 (finding that language of statute and regulation was “mandatory, specific and clear”); Doe by Fein, 93 F.3d at 867 (stating that statutory provision failed Wilder test because regulations, unlike regulations in Wilder, were not mandatory); Tony L. By and Through Simpson, 71 F.3d at 1189 (concluding that statutory provision failed Wilder test because neither statute nor regulations were mandatory); Loschiavo, 33 F.3d at 552 (stating that regulation included "sufficient mandatory language ... to create a binding obligation....”); Howe, 8 F.3d at 1263 (finding that statute and regulations established mandates that were “particular and specific enough to impose binding obligations”); Albiston, 7 F.3d at 265 (concluding that statutory and regulatory provisions “impose[d] a specific, definite and mandatory obligation”); Pinnacle Nursing Home, 928 F.2d at 1313-14 (describing how Wilder Court, in concluding that statutory provision was mandatory, relied on both statutory and regulatory language).

. Indeed, the State concedes that this court may consider a statute together with regulations under the third prong of the Wilder test. Appellant's Letter Brief at 2.

. See Farley, 102 F.3d at 702 (concluding that language of statute and regulation "is not too vague or amorphous to be enforced by courts”); Lindley, 66 F.3d at 827 (finding no enforceable right where regulations provided no clear guidance but instead merely tracked "amorphous statutory language”); Buckley, 66 F.3d at 192 (holding that statute was unambiguous because of clear command of regulation); Loschiavo, 33 F.3d at 552-53 (concluding that regulation was sufficiently "unambiguous” and "straightforward” to establish enforceable right); Martinez, 32 F.3d at 1421 & n. 4 (finding no § 1983 right of action where statute had "no manageable standards” and implementing regulations were "no clearer"); Howe, 8 F.3d at 1263 (finding that statute and implementing regulations established mandates that were "particular and specific enough to impose binding obligations”); Albiston, 7 F.3d at 265 (concluding that statutory and regulatory provisions imposed "a specific, definite and mandatory obligation”).

. The court in Kirk held simply that "[a]n administrative regulation ... cannot create an enforceable § 1983 interest not already implicit in the enforcing statute.” 821 F.2d at 984.

. The Ninth Circuit’s decision in Buckley, supra, renders meaningless its previous dicta in Howard v. City of Burlingame, 937 F.2d 1376, 1380 & n. 4 (9th Cir.l991)(stating that regulations may "define legal obligations enforceable under § 1983,” but that there is "some question as to whether they may create rights not already implied by the enabling statute”). The Fifth Circuit appears not to have determined how to treat regulations in conducting the Wilder inquiry. See Gracia v. Brownsville Hous., 105 F.3d 1053, 1057 (5th Cir.1997) ("[I]t is not clear that regulations can be considered 'laws’ for purposes of creating a right actionable under section 1983.”), cert. denied, - U.S. -, 118 S.Ct. 171, — L.Ed.2d -(1997).

. Adequate transportation was one of the original "criteria to assure high quality of the care and services provided under" State Medicaid plans. Supplement D to the Handbook of Public Assistance Administration § D-5130(2)(b) (June 17, 1966), Secretary's Exhibit B. The transportation requirement was included in the initial interim rules for the Medicaid program, see 33 Fed.Reg. 16,165 (1968), then codified at 45 C.F.R. § 249.10(a)(4) (1970)(slating that State *1017 plan must "specify that there will be provision for assuring necessary transportation of recipients to and from providers of services and describe the methods that will be used”), relocated to 45 C.F.R. § 249.10(a)(5)(h) (1974), relocated to 45 C.F.R. § 449.10(a)(5)(h) (1977), and finally slightly revised and relocated to 45 C.F.R. § 431.53 (1978). See 43 Fed.Reg. 45,176, 45,188 (1978) (reorganizing Medicaid regulations "without making any substantive change”).

. See Secretary's Brief at 5-7 (explaining why states benefit from the flexibility of being able to provide transportation either as an administrative activity, see 42 C.F.R. § 431.53, or as an optional medical service, see 42 U.S.C. § 1396d(a)(xi)(25) and 42 C.F.R. § 440.170(a)).

. See infra Pari III.C.

. But see Albiston, 7 F.3d at 267 (employing regulation to “demarcate the contours of reasonable ‘promptness’ in the Title IV-A context”).

. Indeed, transportation to and from medical providers is so essential to recipients’ receipt of medical services that the right to transportation is implicit in the statute itself. Cf. Livadas v. Bradshaw, 512 U.S. 107, 132-34, 114 S.Ct. 2068, 2083-84, 129 L.Ed.2d 93 (1994) (concluding that plaintiff had enforceable rights to complete collective-bargaining process and agree to an arbitration clause because such rights "if not provided in so many words” were "imminent in [the] structure” of National Labor Relations Act); Golden State, 493 U.S. at 111, 110 S.Ct. at 451 ("The violation of a federal right that has been found to be implicit in a statute’s language and structure is as much a ‘direct violation’ of a right as is the violation of a right that is clearly set forth in the text of the statute.”).

. In Vowell, supra, the court staled that the transportation regulation, necessary for the efficient administration of the Medicaid program, was directly related to the plaintiffs' receipt of services:
A fortiori, it is clear that the Secretary of HEW has determined the instant regulation to be necessary to the administration of the program, for the obvious (and common sense) reason that needy [sic] will not be able to obtain necessary and timely medical care if they are without the means of getting to the providers of the service.
379 F.Supp. at 150 (citations and internal quotations omitted). Thus, § 1396a(a)(4) and 42 C.F.R. § 431.53 differ from the statute and regulations considered by the Court in Blessing, - U.S. at -, 117 S.Ct. at 1361. There, the Court determined that "many provisions, like the 'substantial compliance' standard, are designed only to guide the State in structuring its systemwide efforts at enforcing support obligations. These provisions may ultimately benefit individuals who are eligible for Title IV-D services, but only indirectly.” The data processing requirements, for example, did "not give rise to individualized rights to computer services.” Id. By contrast, as recognized by the Secretary and affirmed by the Vowell court, the transportation regulation at issue here is directly related to the benefits received by the plaintiffs.

. In Suter, the Court stated that the Adoption Assistance and Child Welfare Act only required that the "State have a plan approved by the Secretary which contains the 16 listed features.” 503 U.S. at 358, 112 S.Ct. at 1367. Suter thus appeared to limit the enforceable rights available under those programs of the Social Security Act requiring State plans. After Suter, however, Congress enacted an amendment providing: "In an action brought to enforce a provision of this chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan.” 42 U.S.C. § 1320a-2. See Jeanine B. v. Thompson, 877 F.Supp. 1268, 1283 (E.D.Wis.1995) (stating that after § 1320a-2 “the previous tests of Wilder and Pennhurst apply to the question whether or not the particulars of a state plan can be enforced by its intended beneficiaries”). Thus, as was true prior to Suter, required elements in a Medicaid Stale plan can establish substantive enforceable rights. See Wilder, 496 U.S. at 512-15, 110 S.Ct. at 2518-20 (citing Secretary’s authority under § 1396c to withhold funds for non-compliance and concluding that statute required that the State actually adopt reasonable and adequate rates); Silver, 804 F.2d at 1216-17 (concluding that “freedom of choice” requirement in State plan established enforceable rights in Medicaid recipients) (quoting O’Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 785, 100 S.Ct. 2467, 2475, 65 L.Ed.2d 506 (1980)).

.The State Medicaid Manual, reprinted in Medicare & Medicaid Guide (CCH) ¶ 14,605.89, at 6309-7 (1997), states in part:
Federal regulations at 42 C.F.R. § 431.53 require states to assure necessary transportation to recipients to and from providers. A description of the method of assurance to be used must be included in the state’s title XIX state plan. Transportation must be covered either under the state’s administrative requirements, or as an optional state plan item of medical assistance, or, may be included under both categories.... [T]ransporlation services for which a state claims reimbursement as an administrative expense are not subject to the freedom-of-choice provision. For such transportation, a state may designate allowable modes of transportation or arrange for transportation on a prepaid or contract basis with transit companies.

. See Morgan v. Cohen, 665 F.Supp. 1164, 1175-77 (E.D.Pa.1987); Daniels, 1985 WL 56553, at *1-*9; Fant v. Stumbo, 552 F.Supp. 617, 618-19 (W.D.Ky.1982); Bingham v. Obledo, 147 Cal.App.3d 401, 404-05, 195 Cal.Rptr. 142 (Cal. Ct.App.1983).

. The State provided only emergency ambulance transportation to hospitals and skilled nursing facilities. 195 Cal.Rptr. at 155-57.

. The majority notes that the Court in Wilder rejected an argument that “Congress has foreclosed enforcement of the Medicaid Act under § 1983.” 496 U.S. at 520-23, 110 S.Ct. at 2523-25.